# Nicrosi *v.* Calera Land Co.

*Bill in Equity to compel Payment of Unpaid Subscription to Capital Stock in a Corporation.*

1. *Chancery pleadings; by whom suit can be maintained.*—One at whose instance and risk, and for whose benefit a suit in equity is instituted is deemed the real complainant in determining whether the right to maintain the suit exists; and if such person could not maintain the suit in his own name, it can not be maintained by the nominal complainant.

2. *Organization of corporation; subscriber's liability; estoppel.*— Where several persons associate themselves together for a common purpose, and under an agreement between themselves purchase land to be conveyed to a corporation to be afterwards formed, and under the contract the corporation was to issue them stock at the ratio of five dollars worth of stock for every dollar paid to the fund for purchasing the land, after the organization of the corporation in accordance with the agreement, one of such persons who became a director of the corporation and afterwards sold his stock and became a creditor of the corporation, can not, on its becoming insolvent, maintain a bill against the other parties to the agreement, to compel them as subscribers to said corporation to pay the difference between the face value of their stock and the property conveyed; such person being doubly estopped in that he participated as an associate with the defendants in the conveyance of their common property at a fictitious valuation in payment of the subscription, realizing the full benefit of the over issue of stock, and participated as a director in the corporation's acceptance of his and their payment for such stock.

APPEAL from the Chancery Court of Montgomery.
Heard before the Hon. JERE N. WILLIAMS.
The facts of the case are sufficiently stated in the opinion.

THOS. H. WATTS, for appellant.—1. The law applicable to this case is thus expressed by this court: "This court, following the weight of authority as declared in

other tribunals, and which seems to us to be based upon sound principles, has recently decided that a subscription for stock payable in ‘property at a fictituous valuation, and which could not be enforced against the subscriber by the corporation in its own interest, because violative of Article XIV, §6 of the Constitution and section 1662 of the Code, is not void as against a creditor and can not be set up as a legal defense against a creditor of the corporation.''—*Davis Bros. v. Montgomery F. & C. Co.*, 101 Ala. 127. It has also been said by this court, in discussing this very transaction, that, ''The capital of a corporation is regarded as a trust fund for its creditors, and upon the theory that the difference between the face value of shares in such capital and the value of the property which has been conveyed to the corporation for such shares at an over-valuation, belongs to and constitutes in part such trust fund, a court of chancery will, at the instance of creditors, conserve the integrity of the fund by decreeing the payment of such difference by the subscriber.''—*Nicrosi v. Irvine*, 102 Ala. 654. This principle is sustained by the following authorities : *Gay v. Brierfield C. & I. Co.*, 94 Ala. 331 ; *Parson v. Joseph*, 92 Ala. 403 ; Cook on Stockholders, § 423 ; *Scovill v. Thayer*, 105 U. S. 143 ; *Sagory v. Dubois*, 3 Sandf. Ch. 466 ; *National Tube Works v. Gilfillan*, 124 N. Y. 302.

2. One who has become bound as a subscriber to the capital stock of a corporation must pay the subscription if required to meet the obligations of the corporation. A certificate in his favor for the stock is not necessary to make him a subscriber. All that need be done, so far as the creditors are concerned, is that the subscriber shall have bound himself to become a contributor to the fund which the capital stock represents. If such an obligation exists, the courts can enforce the contribution when required. After having bound himself to contribute, he can not be discharged from the obligation he has assumed until the contribution has been actually made or the obligation in some lawful way extinguished. *Glenn v. Scott*, 28 Fed. Rep. 804 ; Cook on Stockholders, §§ 251, 309, 310, 312 ; *Douglas v. Ireland*, 73 N. Y. 100 ; *Boynton v. Andrews*, 63 N. Y. 93 ; *Osgood v. King*, 42 Iowa 478 ; *Williams v. Evans*, 87 Ala. 725 ; *Hawley v. Upton*, 102 U. S. 314.

[Nicrosi v. Calera Land Co.]

GUNTER & GUNTER, J. M. CHILTON and W. R. HOUGHTON, *contra.*—1. This suit is brought for the use of J. W. Dimmick and at his cost and charge. He is contaminated by "the original sin," if any, in the organization of the company. He consented to and participated in all that was done. And thus, as settled in the case of *Elyton L. Co. v. Birmingham W. & E. Co.*, 92 Ala. 426, no relief can be granted to him. "Disability to question a wrongful transaction usually attaches to a party who consented thereto or participated therein."

2. The complainant in this bill, who is operating for Dimmick, is estopped to avoid the sale as made to the corporation, and he is therefore estopped to compel his associates, who are defendants, to pay the difference claimed in their stock subscriptions.—*Jones v. Anderson*, 82 Ala. 302.

3. In this case there was not shown to have been any fraud in the transaction, even if there was an over-valuation of the land which was conveyed to the corporation in payment of the stock subscription. The complainant has not shown himself entitled to the relief prayed for. *Elyton Land Co. v. Birmingham W. & E. Co.*, 92 Ala. 426; *Boom Co. v. Patterson*, 98 U. S. 403; *Thurber v. Thompson*, 21 Hun. 474; 1 Cook on Stockholders, (2d ed.), 47; 2 Thompson on Corporations, §§ 618, 619.

McCLELLAN, J.—The bill in this case was filed by John B. Nicrosi as a judgment creditor of the respondent land company. Its averments are in substance the following: In 1885 the Calera Land Company was incorporated and organized with a capital stock of $500,000, divided into 5,000 shares, and carried on its corporate business until 1892, when it became and still is utterly insolvent. In the year last named, complainant recovered a judgment against the company for about $7,800 on an obligation upon which Moses Brothers were indorsers, and twenty-two and one-half per cent of the recovery had been paid by the assignees of said Moses Brothers, the balance remaining unpaid. Execution issued on said judgment, and was returned "no property." David Weil and certain other persons who are parties defendant to the bill, and their associates in 1885, before the formation of the corporation, entered into an agreement to raise a fund of about $75,000 for

the purpose of purchasing certain lands in and near Calera, and the agreement further provided that after the purchase of said lands, a corporation was to be formed for the purpose of disposing of said lands, and that each of the parties to the agreement should subscribe to the stock of the corporation, and that the lands so purchased should be conveyed to the corporation when formed in payment of the stock subscriptions ; that one-fourth of the stock was to be retained by the company as treasury stock, and that stock in the corporation in the ratio of five dollars of stock for every dollar subscribed and paid to the fund for purchasing the land should be issued to each subscriber. The fund was raised and the lands purchased as agreed upon, the lands being conveyed to Holt, one of the associates, as trustee for himself and the others. Subsequently the corporation was formed, and its stock subscribed for according to the agreement, each person subscribing for twenty-five per cent more stock than was issued to him ; and Holt as trustee conveyed the lands to the corporation upon the agreement that the corporation should issue to each subscriber to the fund for the purchase of the lands stock in the ratio of five dollars of stock for each dollar subscribed to said land fund, and that the balance of the stock should be held by the corporation as treasury stock. Under this scheme there was issued to the associates raising the land fund $375,000 in the ratio of five dollars of stock for each dollar contributed by them severally to the land purchase fund ; and the balance of $125,000 of stock was retained by the company. The corporation had no other property than this treasury stock and the lands so conveyed to it. Said lands were not worth exceeding $75,000. The bill shows the amount subscribed by each of the individual defendants toward the purchase of the lands, and that they each received five dollars in stock for every dollar so contributed to the land fund, and that none of defendants paid anything for the stock so subscribed for and issued except said land.

The prayer of the bill is for a reference to ascertain the amount of stock subscribed for by each of said defendants, and how much has been paid by each defendant for his stock, and that each of said individual defendants be required to pay into court the amount so

found to be due, or an aggregate amount sufficient to satisfy complainant's judgment and costs.

Among others, the defendants, other than the company and M. B. Houghton, filed the following plea: "1. That the complainant's debt is founded upon a bill of exchange given by the Calera Land Co. in the year 1891, which was endorsed for the accommodation of said company by J. W. Dimmick, who was a large stockholder and one of the directors of said Calera Land Co. and whose stock was acquired in every respect as it is alleged in the bill the respondents' stock was acquired; that said Dimmick was one of the original parties in buying said land and in forming the corporation, and received a large amount of stock for which he paid nothing except his interest in the land, the amount of stock so received by him being five times the amount contributed towards the purchase of the land; that said Dimmick either now holds said stock or has disposed of it as stock fully paid for; that the said Dimmick was fully cognizant of and participated in all the affairs of the company, including the acquisition and disposition of the lands up to and after his endorsement of said bill of exchange and that since then, on executions issued against said company, in connection with other stockholders, has bought all the lands of said company except a small portion thereof which had been previously sold; and that said Dimmick, finding that he was liable for said debt, entered into a conspiracy with the complainant for the latter to prosecute his present suit to compel the payment of said debt by the respondents, and that this suit is prosecuted at the instance and for the benefit of said Dimmick, who has indemnified the complainant against all liability for costs and has paid the debt or secured the same in some way to complainant in the event that it is not collected out of respondents; that said Dimmick resides in Montgomery, is solvent and that he is having this suit prosecuted for his benefit to shield himself from contributing towards the payment of said debt, and that complainant has conspired with said Dimmick to carry out said unlawful purpose."

This plea was held good on exceptions taken to it by the complainant, and its averments are sustained by the

28

evidence adduced at the hearing. The question is, whether the facts averred in the plea present a bar to relief. We see no escape from the conclusion that this question is to be determined upon precisely the same principles and considerations which would obtain if Dimmick were himself the complainant in the bill. He is indeed, the real complainant though his name does not appear as that of a party to the cause. On the allegations of the plea and the evidence supporting them the suit was instituted at his instance and entirely for his benefit, and a decree in favor of complainant would enure to his advantage alone, and one against the complainant would enure solely to his detriment. The nominal complainant is merely his man of straw, his *alter ego*, himself, in the view of a court of chancery which looks to the substance rather than to the form of things; and if the bill could not be maintained by him in his own name upon payment of the note to Nicrosi it can not now be maintained by Nicrosi for him, the payment of the note on demand being fully secured to Nicrosi. What he may not do directly, the court will not permit him to do by indirection.

And so the inquiry is whether Dimmick as a creditor of the Calera Land Company could maintain a bill to coerce payment by the subscribers to its capital stock of the difference between the face of the stock subscribed for by them and the value of the property conveyed by them to the company as in full payment of their subscriptions, he having been one with them in raising and contributing to the fund of $75,000 with which the lands were purchased, in subscribing for five dollars of stock for every dollar paid for the land, in conveying the land to the company in full payment of the stock so subscribed for, amounting to $375,000, and in receiving five dollars of stock for each dollar contributed by him to the land fund, or $5,000 in stock for the $1,000 he so contributed, which he afterwards sold, one half or $2,500 for ninety cents and the remainder for ten cents on the dollar. We are of opinion that Dimmick could not maintain such a bill. It is not necessarily a question of "unclean hands," since the fictitious valuation of the property conveyed in payment of the stock need not have been tainted with actual fraud. But it is a matter of estoppel upon him to assert against his associates

[Nicrosi v. Calera Land Co.]

that the property was overvalued or that the subscriptions were not fully paid in money or in money's worth equal to the face value of the stock; and this more especially as he was not only one of the subscribers and in that capacity united with the individual respondents in conveying to the company property which for the purpose of this discussion is to be assumed to have been worth only $75,000, in full payment of $375,000 of stock, but was also a director of the corporation and in that capacity received such payment of the subscriptions as full and sufficient. He is, therefore, doubly estopped. He participated as an associate of the individual defendants in the conveyance of their common property at a fictitious valuation in payment of the subscriptions, and he not only received but has realized upon the full benefit of the over issue of stock along and in common with them, and he participated as a director in the corporation's acceptance of his and their conveyance as full payment; and he can not now, after such dual participation, after he has thus fully and doubly sanctioned the transtion as in every way legal and adequate, and knowingly taken and received the full measure of benefit under it, be heard to say that it was in any respect wrong or illegal, or fell short in any degree of the consummation intended by him no less than his associates—an adequate and full payment of and for all the stock issued or to have been issued to him and them. Having participated in and taken under the transaction he can not now take against it.

The plea, we conclude, was established by the evidence and was a perfect defense to the respondents who interposed it. The respondent, M. B. Houghton, did not join in the plea, but did plead *non est factum* to his alleged subscription. We think the evidence establishes that he did not in person or by authorized agent *subscribe* for any stock in the company, but that his only connection with the transaction was a purchaser of stock which belonged originally to Adams, who did subscribe, and this he held for only a few days.

We do not at all consider the question whether the property was conveyed at a fictitious valuation in payment of the subscriptions.

The decree of the chancellor denying relief and dismissing the bill is affirmed.

Affirmed.